JP:MSA
F.#2011R01841

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X         11-1236 M

UNITED STATES OF AMERICA              <u>COMPLAINT</u>
                                      (T. 18, U.S.C.
        -against-                      §§ 922(a)(1)(A) and 2)

TAUFIQ ABDULLAH and

ANTHONY FERRERI,

            Defendants.

- - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

        PATRICK COLLINS, being duly sworn, deposes and says
that he is a Special Agent with the Bureau of Alcohol, Tobacco,
Firearms and Explosives ("ATF"), duly appointed according to law
and acting as such.

        On or about and between April 21, 2011 and December 14,
2011, within the Eastern District of New York and elsewhere, the
defendants TAUFIQ ABDULLAH and ANTHONY FERRERI, not being
licensed importers, licensed manufacturers, licensed dealers or
licensed collectors of firearms did knowingly and willfully
engage in the business of dealing in firearms, and, in the course
of such business, shipped and transported firearms in interstate
commerce.

        (Title 18, United States Code, Sections 922 and 2)

The source of your deponent's information and the grounds for his belief are as follows:[1]/

1.   I have been special agent with ATF for approximately four years.  I am currently assigned to the Joint Firearms Task Force.  In this capacity, I investigate, among other things, violations of the federal firearms laws and related offenses in the New York metropolitan area and elsewhere.  The information set forth in this complaint is based on my own observations, interviews with law enforcement officers and review of ATF records.

## FACTS

2.   On May 4, 2011, at approximately 8:00 p.m. at 249 Hooker Place in Staten Island, New York, an ATF undercover officer ("UC") conducted a controlled audio and video recorded purchase of a "Mac-11" pistol from defendant ABDULLAH.  By arrangement with defendant ABDULLAH, the UC traveled to and entered a ground floor garage inside of 249 Hooker Place. Inside, defendant ABDULLAH discussed his firearms trafficking with the UC.  Defendant ABDULLAH explained that he transports firearms to New York from outside the state, disassembling the weapons beforehand so that he could not be prosecuted if the

---

[1]/   Because the purpose of this affidavit is to establish only probable cause to obtain an arrest warrant, I have not set forth a description of all the facts and circumstances of which I am aware.

weapons were discovered.  Defendant ABDULLAH further stated that he had a local connection for ammunition.  Defendant ABDULLAH also said that he was planning to bring a large number of weapons to New York from the southern United States at the end of the month.  Defendant ABDULLAH provided the UC with a SDW "Mac-11" 9 mm pistol with an obliterated serial number and 9 mm ammunition in exchange for currency.  After the transaction, the UC provided the firearm to supervising agents.

3.   On June 29, 2011, the UC conducted a controlled recorded telephone call with defendant ABDULLAH.  During the call, the UC and defendant ABDULLAH, speaking in coded language, planned a firearms transaction.  Defendant ABDULLAH said, in sum and substance, that he was not in New York state, but would return in seven-to-ten days prepared to sell ten firearms to the UC.  Defendant ABDULLAH inquired whether the UC desired handguns or larger firearms.  The UC responded that, while he preferred handguns, he would also purchase larger firearms.

4.   On July 12, 2011, at approximately 8:00 p.m. inside of 226 Pulaski Avenue in Staten Island, New York, after arranging a transaction by telephone, defendant ABDULLAH sold five firearms and ammunition to the UC during a controlled audio recorded meeting.  Shortly before 8:00 p.m., the UC met defendant ABDULLAH on the corner of Hooker Place and Pulaski Avenue.  The UC followed defendant ABDULLAH inside of 226 Pulaski Avenue.

Defendant ABDULLAH introduced the UC to an individual whose identity is known to the government ("S-1"), who brought a duffle bag containing five firearms from an interior room.  Defendant ABDULLAH provided the firearms and ammunition to the UC in exchange for currency.  Defendant ABDULLAH told the UC that he would be returning to the southern United States in the following two weeks, and offered to sell additional firearms to the UC. When the meeting concluded, the UC provided the bag to supervising ATF agents.  The bag contained ammunition and the following firearms: (a) a Taurus 9 mm pistol; (b) a SCCY 9 mm pistol; (c) a Davis Industries .380 caliber pistol; (d) a Smith & Wesson .357 magnum pistol; and (e) a Norinco 12 gauge shotgun.

5.    On November 16, 2011, at approximately 8:10 p.m. inside of a ground floor garage of 249 Hooker Place in Staten Island, New York,[2] the UC purchased eleven firearms from defendant ABDULLAH during a controlled transaction inside.[3] Earlier in the same day, defendant ABDULLAH and the UC arranged to meet at 249 Hooker Place for the transaction.

---

[2]    The transaction occurred inside of the same ground floor garage in which the May 4, 2011 transaction occurred.

[3]    Prior to the transaction, agents provided the UC with an audio and video recording device and an audio transmitter, but the recording device failed during the transaction.  Thus, only part of the transaction was recorded, although agents were able to monitor the meeting via the UC's transmitting device.

6.    Shortly before the transaction, ATF agents conducting surveillance observed defendant ABDULLAH arrive at 249 Hooker Place in a vehicle with New York state license plate number FLP 7010, and meet the UC.

7.    The UC and defendant ABDULLAH walked inside of a ground floor garage in 249 Hooker Place, where defendant ABDULLAH explained that he had stored the firearms for the transaction at another location, and showed the UC photographs of the firearms on defendant ABDULLAH's cellular telephone.  Defendant ABDULLAH then left 249 Hooker Place to retrieve the firearms.  ATF agents conducting surveillance outside of 249 Hooker Place observed defendant ABDULLAH leave the building and drive away in his vehicle.  The UC left 249 Hooker Place and waited for defendant ABDULLAH's return.

8.    At approximately 9:02 p.m. on the same day, defendant ABDULLAH returned to garage in 249 Hooker Place, met with the UC inside of the ground floor garage, and sold eleven firearms to the UC in exchange for currency.  During the transaction, the UC observed an additional firearm that was not involved in the purchase and sale in plain view inside of the garage.  The UC exited 249 Hooker Place and provided the items he purchased to the supervising ATF agent.  During the transaction, defendant ABDULLAH sold the UC: (a) a Mossberg 12 gauge shotgun; (b) a FNH 9 mm pistol; (c) a Smith & Wesson pistol; (d) a High

Standard .22 pistol with an obliterated serial number; (e) an
Amadeo Rossi .38 special pistol; (f) an N.E.F. .22 caliber
pistol; (g) a Rohm .22 caliber pistol; (h) a Taurus .357 magnum
pistol; (i) a Smith & Wesson .45 caliber pistol; (j) a Bryco Arms
.380 caliber pistol; (k) an HW Sportwaffen .357 caliber pistol;
(l) a speed loader for a revolver; (m) a handgun grip; and (n)
two magazines.

    9.    On December 13, 2011 at approximately 12:27 p.m.,
defendant ABDULLAH contacted the UC by text message to arrange a
purchase and sale of firearms.  By telephone later that day,
defendant ABDULLAH and UC agreed to meet on December 14, 2011 for
a transaction.

    10.   On December 15, 2011, at approximately 5:50 p.m.
inside of 226 Pulaski Avenue in Staten Island, New York,
defendants ABDULLAH and FERRERI sold the UC eight firearms,
assorted ammunition, ammunition magazines and firearms
accessories during a controlled audio and video recorded
transaction.  The UC and defendant ABDULLAH met near 226 Pulaski
Avenue, and defendant ABDULLAH led the UC inside of 226 Pulaski
Avenue, Apartment 2, to a back bedroom ("bedroom 1").  Inside
bedroom 1, the UC and defendant ABDULLAH met the defendant
FERRERI.  Laid out for display on the bed were firearms,
ammunition and holsters, among other firearms-related items.  The
defendant ADBULLAH showed the UC an additional handgun that the

defendant ABDULLAH placed into his waist band.  The UC provided pre-recorded marked currency to defendant ABDULLAH, who placed the firearms and other items from the bed inside a bag, which defendant ABDULLAH handed to the UC.

11.  When the UC exited the apartment, he telephoned defendant ABDULLAH and asked him to come outside.  Agents conducting surveillance then witnessed defendants ADBULLAH and FERRERI exit the building.  Agents arrested ABDULLAH and FERRERI. At the time of his arrest, defendant FERRERI was in the process of handing pre-recorded marked currency from the transaction to a woman in a car just outside 226 Pulaski Avenue.

12.  After receiving and waiving his Miranda warnings, defendant FERRERI admitted that he knowingly allowed defendant ABDULLAH to use his apartment for the firearms transaction in exchange for a portion of the proceeds of the transaction.

13.  Defendant FERRERI and S-1, who was inside the apartment but not in bedroom 1 during the transaction, consented to searches of their respective bedrooms inside of 226 Pulaski Street.  Defendant FERRERI identified his bedroom as bedroom 1 (where the transaction with the UC took place).  While inside the apartment to conduct the searches, agents viewed in plain view and seized a firearm from on top of a cardboard box in the kitchen.  Agents also discovered inside of bedroom 1 an object that, based on my training and experience as an ATF agent,

appears to be a either firearm flash suppressor or silencer attached to a gun barrel that had been detached from a firearm. Also inside bedroom were firearms accessories, such as ammunition magazines and cleaning kits, and a backpack that contained a large number of rounds of assorted ammunition.  Agents also discovered inside of bedroom 1 documents connecting defendant FERRERI to 226 Pulaski Avenue.

14.  I have reviewed records from a database accessible to law enforcement related to New York license plate FLP 7010, which was on the car that the defendant ABDULLAH drove to meet the UC on November 16, 2011.  The license plate is registered in the defendant's name.  The UC viewed and identified a New York City Police Department photograph of the defendant as the same person who sold firearms to the UC in the transactions described above.

15.   Based on a search of ATF records, neither defendant ABDULLAH nor defendant FERRERI is a licensed importer, licensed manufacturer, licensed dealer or licensed collector of firearms.

### CONCLUSION

WHEREFORE, your deponent respectfully requests that the defendants TAUFIQ ABDULLAH and ANTHONY FERRERI be dealt with according to law.

S/ Patrick Collins
_____
Special Agent Patrick Collins
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn to before me this
15th day of December, 2011

S/ Cheryl Pollak
_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK